

# THE ATTORNEY GENERAL
## OF TEXAS

November 12, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Oscar H. Mauzy  
Chairman  
Committee on Jurisprudence  
Texas State Senate  
P. O. Box 12068  
Austin, Texas    78711

Opinion No.   JM-576

Re: Whether article 1269k, V.T.C.S., requires a housing authority to hold a public hearing before it may authorize the acquisition of existing structures

Dear Senator Mauzy:

You have requested our opinion about the scope of the public hearing requirement in section 13a of the Housing Authorities Law, article 1269k, V.T.C.S. Specifically, you want to know whether the Housing Authority of the City of Houston [HACH] must hold a public hearing before it may authorize the acquisition of existing dwellings to be used for low-income housing. You do not ask about the applicability of the Open Meetings Act. See generally V.T.C.S. art. 6252-17.

The purpose of the Housing Authorities Law is to clear slums and to provide decent housing for persons of low income. See V.T.C.S. art. 1269k, §2. Article 1269k gives housing authorities the power to authorize "housing projects." Art. 1269k, §8; see also art. 1269k, §3(i) (definition of "housing project"). In 1981 the Housing Authorities Law was amended to include the following provision:

> Sec. 13a. (a) A housing authority may not authorize the construction of a housing project and may not obtain any permit, certificate, or other authorization required by an incorporated city or town or other political subdivision of the State for any part of the construction of a housing project unless the commissioners of the authority hold a public meeting about the proposed project prior to that site being approved for the housing project. The commissioners shall hold the meeting at the closest available facility to the site of the proposed project. At least a majority of the commissioners must attend the meeting. The commissioners shall give any person who owns or leases real property within a one-fourth mile radius of the site of the proposed housing project the opportunity to comment on the proposed project.

(b) In addition to any other notice required by law, the commissioners shall post notice of the date, hour, place, and subject of the meeting at least 30 days before the scheduled day of the meeting on a bulletin board at a place convenient to the public in the county courthouse of the county in which the proposed project is to be located and on a bulletin board at a place convenient to the public in the city hall if the proposed project is to be located within the boundaries of an incorporated city. The commissioners shall have a copy of the notice published in a newspaper or newspapers that individually or collectively provide general circulation to the county in which the proposed project is to be located. The notice must be published one time at least 30 days before the scheduled day of the meeting. The commissioners shall mail a notice containing the same information 30 days before the date of the meeting to any person who owns real property within one-fourth of a mile radius of the site of the proposed project. The commissioners may rely on the most recent county tax roll for the names and addresses of the owners. The commissioners shall also have posted at the proposed project site 30 days before the date of the meeting a sign having dimensions no smaller than four feet by four feet and bearing in eight-inch letters a caption stating 'Site of Proposed Housing Project.' The sign shall be located at a point on the proposed project site visible from a regularly travelled thoroughfare and shall state the nature of the project, the location of the project, the names and addresses of all governmental entities involved in the development of the proposed project, and the date, time, and place of the public meeting.

(c) An incorporated city or town or other political subdivision of the State may not issue a permit, certificate, or other authorization for any part of the construction or for the occupancy of a housing project under this Act unless the housing authority has complied with the requirements of this section.

(d) For purposes of the public meeting requirements in Subsection (a) of this section and for the purposes of Section 6 of this Act, 'housing project' means, in addition to the definition prescribed in Subsection (i), Section 3, of this Act:

(1) any work or undertaking that is financed in any way by public funds or tax exempt revenue bonds and undertaken for any of the reasons listed in Subsection (i) of Section 3; or

(2) a building over which a housing authority has jurisdiction and which has any part reserved for occupancy by persons receiving income or rental supplements from a governmental entity. (Emphasis added).

V.T.C.S. art. 1269k, §13a. You ask whether section 13a requires HACH to hold a public hearing before it may acquire existing dwellings.

Before we reach your question, we must determine whether HACH has the authority to acquire existing dwellings to be used as low-income housing. A housing authority has the following powers:

(b) Within its area of operation: to prepare, carry out, acquire, lease, and operate housing projects; to provide for the construction, reconstruction, improvement, alteration, or repair of any housing project or any part thereof.

. . . .

(d) To lease or rent any dwellings, houses, accommodations, lands, buildings, structures, or facilities embraced in any housing project and (subject to the limitations contained in this Act) to establish and revise the rents or charges therefor; to own, hold, and improve real or personal property; to purchase, lease, obtain options upon, acquire by gift, grant, bequest, devise, or otherwise any real or personal property or any interest therein; to acquire by the exercise of the power of eminent domain any real property; to sell, lease, exchange, transfer, assign, pledge, or dispose of any real or personal property or any interest therein to insure or provide for the insurance of any real or personal property or operations of the authority against any risks or hazards; to procure insurance or guarantees from the Federal Government of the payment of any debts or parts thereof (whether or not incurred by said authority) secured by mortgages on any property included in any of its housing projects. (Emphasis added).

V.T.C.S. art. 1269k, §§8(b), (d).

Article 1269k, §3(i) defines "housing project" as follows:

> 'Housing Project' shall mean <u>any work or under-</u>
> <u>taking</u>: (1) to demolish, clear, or remove buildings
> from any slum area; such work or undertaking may
> embrace the adaption of such area to public pur-
> poses, including parks or other recreational or
> community purposes; or (2) <u>to provide decent, safe,</u>
> <u>and sanitary urban or rural dwellings</u>, apartments,
> <u>or other living accommodations for persons of low</u>
> <u>income</u>; such work or undertaking may include
> buildings, land, equipment, facilities, and other
> real or personal property for necessary, con-
> venient, or desirable appurtenances, streets,
> sewers, water service, parks, site preparation,
> gardening, administrative, community, health,
> recreational, educational, welfare, or other
> purposes; or (3) to accomplish a combination of the
> foregoing. The term 'housing project' also may be
> applied to the planning of the buildings and
> improvements, <u>the acquisition of property</u>, the
> demolition of existing structures, the construc-
> tion, reconstruction, alteration, and repair of the
> improvements and all other work in connection
> therewith. (Emphasis added).

The grant of authority to housing authorities to acquire real property and to carry out any undertaking to provide decent, safe, and sanitary dwellings is broad enough to include the power to authorize the acquisition of existing dwellings to be used for low-income housing. We must read section 13a in light of that broad grant of authority.

Section 13a, subsection (a), provides that a housing authority must hold a public hearing before it authorizes the <u>construction</u> of a housing project. V.T.C.S. art. 1269k, §13a(a). That language is unambiguous. When words in common use are used in a statute, they are to be interpreted as expressing the meaning in which they are ordinarily understood. <u>Satterfield v. Satterfield</u>, 448 S.W.2d 456, 459 (Tex. 1969). "Construction" means "the act of building." Webster's New International Dictionary, (3rd ed. 1961). The acquisition of existing structures is not ordinarily considered to be "construction."[1] If the legislature had intended to require a public hearing

---

1. Fact questions may arise in cases in which proposed improvements to existing structures are extensive enough that they might constitute "construction."

before a housing authority could authorize a housing project, it could have easily done so. Instead, the legislature chose language making the requirement applicable only to the construction of housing projects. Therefore, we cannot construe section 13a as requiring a housing authority to hold a public hearing before it authorizes the acquisition of existing structures. If the legislature intends section 13a to have a broader effect, it should amend the statute.

## S U M M A R Y

Section 13a of article 1269k does not require a housing authority to hold a public hearing before it authorizes the acquisition of existing structures.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General